# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parental Rights to:<br><br>I.D.W., | No. 88188-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — K.S. appeals an order terminating her parental rights to one of her four children, I.D.W., arguing the Department of Children, Youth, and Families (Department) did not establish two of the requirements for termination: (a) that there is little likelihood that conditions would be remedied in I.D.W's near future; and (b) that K.S. was currently unfit to parent. Because substantial evidence supports the trial court's findings as to these issues and K.S. has not otherwise shown error by the trial court in terminating her parental rights, we affirm the termination order.

I

I.D.W. was nine months old in late 2020 when she overdosed on opioids in K.S.'s home and received emergency medical care. On March 16, 2021, a trial court established dependency as to I.D.W. (and her siblings), finding there is "no parent, guardian or custodian capable of adequately caring for the children, such that the children are in circumstances which constitute a danger of substantial

damage to the children's psychological or physical development."[1]  The order of dependency and dispositional order included services to address K.S.'s parental deficiencies, including services to address substance abuse, required urinalysis testing (UAs), services related to parenting skills, and a mental health assessment followed by recommended treatment.

In August 2022, the Department filed an amended petition to terminate K.S.'s parental rights.  After years of continuances and delays, followed by a mistrial, a second termination trial began in March 2025.  At the close of evidence, the Department requested that the trial court grant its petition.  I.D.W.'s court appointed special advocate and father likewise recommended that the trial court grant the petition.  K.S asked the court to deny the petition.  The trial court rejected K.S.'s arguments, granted the Department's petition, and terminated K.S.'s parental rights to I.D.W.  This timely appeal followed.

II

Where, as here, a parent challenges a termination order, we apply a well-established "two-step framework."  *In re Dependency of G.C.B.,* 28 Wn. App. 2d 157, 171, 535 P.3d 451 (2023).  For the first step, the Department must prove by clear, cogent, and convincing evidence the six statutory elements in RCW 13.34.180(1).  *G.C.B.,* 28 Wn. App. 2d at 171.  The only element at issue here is RCW 13.34.180(1)(e), which requires the Department to prove "[t]hat there is little

---

[1] Although the order of dependency also addressed K.S.'s other children, our decision is limited to K.S.'s parental rights to I.D.W.  That is so because, during the termination trial, K.S. and the father of her four children signed agreed guardianship orders as to their two eldest children and agreed to relinquish their parental rights to their youngest child, and the father also signed a relinquishment of parental rights and open adoption agreement as to I.D.W.

likelihood that conditions will be remedied so that the child can be returned to the parent in the near future."[2] Also in the first step, "due process protections require that a court make a finding of current unfitness before parental rights can be terminated." *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 479, 379 P.3d 75 (2016). The second step is that the Department "must establish that termination of parental rights would be in the child's best interest by a preponderance of the evidence." RCW 13.34.190(1)(b); *G.C.B.*, 28 Wn. App. 2d at 171.

Trial courts are afforded broad discretion in termination proceedings, and their decisions are "entitled to great deference on review." *In re Dependency of J.D.P.*, 17 Wn. App. 2d 744, 755, 487 P.3d 960 (2021). We review the court's findings for substantial evidence. *In re Dependency of A.M.F.*, 23 Wn. App. 2d 135, 141, 514 P.3d 755 (2022). We affirm findings as to RCW 13.34.180(1)'s statutory elements where "the ultimate fact at issue is shown to be 'highly probable.'" *J.D.P.*, 17 Wn. App. 2d at 754 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). In performing this analysis, we do not reweigh evidence or reassess the credibility of witnesses, and "we view the evidence and reasonable inferences drawn from it in the light most favorable to the prevailing party." *A.M.F.*, 23 Wn. App. 2d at 141. Here, the prevailing party is the

---

[2] The five other elements are "(a) That the child has been found to be a dependent child," "(b) That the court has entered a dispositional order pursuant to RCW 13.34.130," "(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency," "(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided," and "(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1).

Department.  Lastly, where findings are unchallenged, they are verities on appeal. *In re Dependency of A.N.C.*, 24 Wn. App. 2d 408, 416, 520 P.3d 500 (2022).

As noted, K.S. challenges the trial court's findings (a) that there is little likelihood that conditions would be remedied in I.D.W's near future; and (b) that K.S. was currently unfit to parent.  We address each in turn.

A.    Likelihood of Remedying Conditions in Child's Near Future

Addressing RCW 13.34.180(1)(e), quoted above, the trial court found "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future."  (Emphasis omitted.)  In support of this finding, the court further found:

> Due to her young age the "near future" for [I.D.S.] is less than one month.  Despite her repeated engagement in substance use treatment and mental health services the mother has continued to relapse[.]
>
> Based on the mother's engagement so far, there is no basis to find that she has the ability to remedy her parental deficiencies within the child's near future.
>
> The Mother has not rebutted the statutory presumption that there is little likelihood conditions will be remedied in the near future as the dispositional order was entered on March 16, 2021 and it is now well beyond twelve months from that date.  We are not only one or two or six months beyond that, but over four years.  This history of relapse is strong and long, and a current period of three months of sobriety is not enough to rebut this presumption.  The history to date shows that Mother achieves sobriety, but something happens and causes her to relapse.  She has a strong bond with her children.  Although relapse is part of recovery and is not a failure, it is nonetheless impactful and has impacted her ability to obtain stable employment, stable housing, stable visitation, awareness to keep her residence safe for her children, and her ability to maintain healthy and stable relationships with her children.
>
> [K.S.] has been sober now for 3 months, and [she] truly believes this time is different.  However, that belief, coupled with the long history

of relapse, is not enough to rebut the statutory presumption that there is little likelihood conditions will be remedied in the near future.

K.S. argues substantial evidence does not support the court's finding regarding this statutory element. We disagree.

RCW 13.34.180(1)(e) focuses on whether parenting deficiencies have been corrected. *In re Welfare of E.D.*, 195 Wn. App. 673, 689, 381 P.3d 1230 (2016). To determine whether conditions are likely to be remedied in the near future the court may consider the parent's history of parenting and compliance with services. *Id.* "What constitutes 'near future' depends on the age of the child and the circumstances of the child's placement." *In re Welfare of C.B.*, 134 Wn. App. 942, 954, 143 P.3d 846 (2006). Here, the trial court found that I.D.W.'s "near future" is "less than one month." K.S. does not challenge this finding, so it is a verity on appeal. *A.N.C.*, 24 Wn. App. 2d at 416.

RCW 13.34.180(1)(e) further states, "A parent's failure to substantially improve parental deficiencies within 12 months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future." As noted above, the trial court relied on this rebuttable presumption in its ruling. K.S. argues this was error—and that the rebuttable presumption does not apply here—because she substantially improved within the 12 months following disposition.[3]

---

[3] K.S. also argues "How much a parent must improve in order to 'substantially improve' appears to be a question of first impression." That is incorrect, as numerous cases discuss and apply this statutory standard, and those rulings are instructive here. *See, e.g., C.B.*, 134 Wn. App. at 955; *In re Welfare of T.B.*, 150 Wn. App. 599, 609, 209 P.3d 497 (2009). In any event, it is unnecessary to further define "substantially improve" in this matter because, as discussed in the text above, no

Contrary to K.S.'s argument, substantial evidence supports the finding that she failed to substantially improve within 12 months following entry of the dispositional order on March 16, 2021. K.S's social worker testified K.S. had a "pattern of engaging with services and then stopping communication with providers, with various providers of various different services." In the 12 months following the dispositional order, K.S. started, but did not complete, several substance use disorder programs, she frequently missed UAs or tested positive for prohibited substances, and she briefly engaged in mental health services but then failed to attend numerous sessions including virtual sessions that she was able to attend from home. On this record, the trial court did not err in applying the rebuttable presumption.

K.S. also argues that, in applying the statutory presumption, the trial court impermissibly shifted the burden of persuasion to her. We addressed and rejected a similar argument in *Matter of Dependency of G.E.S.*, 23 Wn. App. 2d 337, 352, 515 P.3d 1046 (2022), as follows:

> When the rebuttable presumption . . . arises because a parent failed to substantially improve parental deficiencies within 12 months following entry of a dispositional order, it does not alter the Department's burden of persuasion. Even when the presumption applies, the Department retains the burden of convincing the court that it is highly probable that a parent would not have improved in the near future. *In re Welfare of C.B.*, 134 Wash. App. 942, 956, 143 P.3d 846 (2006).
>
> The mother cites *C.B.* to support her contention, but the case is inapposite. *C.B.* states that once a court determines that the rebuttable presumption in RCW 13.34.180(1)(e) applies, because it implicates a parent's constitutional rights, the presumption shifts only the burden of production to the parent. *C.B.*, 134 Wash. App. at 955,

evidence suggests that conditions will be remedied so that I.D.W. can be returned to K.S. within I.D.W's near future of less than one month.

143 P.3d 846.  This is the general rule with presumptions, as it is inappropriate to shift the ultimate burden of persuasion where a parent's constitutional rights are at stake.  *C.B.*, 134 Wash. App. at 955, 143 P.3d 846 (citing *Santosky* [*v. Kramer*, 455 U.S. 745, 769, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)]).  Here, like in *C.B.*, the trial court found that the rebuttable presumption in [RCW] 13.34.180(1)(e) applied.  This application shifted the burden to the mother to produce evidence that she was engaged in services and improving.  134 Wash. App. at 955, 143 P.3d 846.  Contrary to the mother's argument, this presumption did not impermissibly shift the burden of persuasion; the Department still retained the burden to persuade the court by clear, cogent, and convincing evidence.  The rebuttable presumption in RCW 13.34.180(1)(e) is constitutional.

Here, as in *G.E.S.* and *C.B.*, application of the rebuttable presumption in RCW 13.34.180(1)(e) shifted the burden of production to K.S., but did not impermissibly shift the burden of persuasion as K.S. claims.

Furthermore, even in the absence of a rebuttable presumption, substantial evidence supports the trial court's finding that "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the mother in the near future."  (Emphasis omitted.)  In 2022, visits with I.D.W. were relocated outside of K.S.'s home because an adult was shot there and it was not considered a safe environment.  K.S. was unable to remain consistently housed due to non-payment of rent and moved to Cowlitz County.  When she participated in UAs, they were positive for prohibited substances.

In 2023, after a brief period of sobriety, K.S. relapsed and then refused in-patient treatment at several available providers that would have allowed her to live with I.D.W. while participating in treatment.  Although K.S. demonstrated periodic clean UAs while in heavily supervised environments, she was unable to provide clean UAs during periods when she was outside of in-patient settings.  When the

Department coordinated flights from Spokane to Western Washington for K.S.'s visits with I.D.W., there were instances where K.S. either missed the flight or was on the flight but failed to attend the planned visits with I.D.W.

In 2024, K.S. reengaged with services under a new structured recovery plan, but then relapsed again during I.D.W.'s first termination trial. K.S.'s home at the time was considered an unsafe environment, so visits with I.D.W. were moved to a public location. K.S. asked her social worker whether she was "trying to set her up for failure" by offering additional visitation opportunities at that time, and K.S. then asked that visits be shortened to two hours. In December 2024, K.S. disengaged with services once more, and no visits were completed that month.

K.S. again reengaged with services in January 2025, but K.S.'s social worker testified at the termination trial that when she visited K.S. at the end of that month she observed conditions indicating K.S. was actively using. Elaborating on what K.S. would "need to do before the Department would attempt or recommend a trial return home to her," her social worker testified K.S. "would need to have consistent visitation with her children," "would need to be engaged with services . . . that would allow her to parent these children in the way that they need to be parented," and "would need to have a place to bring these children." She estimated it would take K.S. "six months to a year" to achieve a "safe enough situation" to return I.D.W. to her care, far longer than I.D.W.'s near future of less than one month.

In sum, substantial evidence supports the trial court's finding "[t]here is little likelihood that conditions will be remedied so that the child can be returned to the

mother within the near future." (Emphasis omitted.) That evidence is not limited to K.S.'s substance use generally, but her longstanding failure to make progress toward remedying the parental deficiencies identified in the termination petition such that she could safely parent I.D.W. The trial court did not err in so finding.

B.      Current Unfitness To Parent

Addressing parental fitness, the trial court found K.S. "is currently unfit to parent the children." In support of this finding, the court further found:

> The dependency orders and the mother's entry into Family Treatment Court were predicated on the mother's substance use impairing her ability to adequately care for the children. The mother has failed to substantially remedy her parental deficiencies in the over four years since entry of the disposition orders.

K.S. argues substantial evidence does not support the court's finding that she was currently unfit to parent I.D.W. We again disagree.

Because parents have a fundamental liberty interest in the custody and care of their children, due process protections require that the trial court make a finding of current parental unfitness before it can terminate parental rights. *K.M.M.*, 186 Wn.2d at 479. "In order to prove unfitness, [DCYF] must show that the parent's deficiencies make [them] incapable of providing 'basic nurture, health, or safety.'" *In re Parental Rights to B.P.*, 186 Wn.2d 292, 313, 376 P.3d 350 (2016) (internal quotation marks omitted) (quoting *In re Welfare of A.B.*, 181 Wn. App. 45, 61, 323 P.3d 1062 (2004)). "The right of a child to basic nurturing includes the right to a safe, stable, and permanent home." RCW 13.34.020. Accordingly, the proper inquiry for parental unfitness "is whether the existing parental deficiencies, or other

conditions, prevent the parent from providing for the child's basic health, welfare, and safety." *K.M.M.*, 186 Wn.2d at 493.

Although parental unfitness is a separate, nonstatutory prerequisite to termination, "satisfaction of the six statutory elements of .180(1) is an implicit finding of unfitness, satisfying the due process requirement that a court must find parents currently unfit before terminating the parent-child relationship." *In re Dependency of K.N.J.*, 171 Wn.2d 568, 577, 257 P.3d 522 (2011). That is so because "the statutory elements of RCW 13.34.180(1) 'necessarily and implicitly include[] evidence of current parental unfitness.'" *K.M.M.*, 186 Wn.2d at 490 (alteration in original) (quoting *In re Dependency of K.R.*, 128 Wn.2d 129, 142, 904 P.2d 1132 (1995)). Here, K.S. does not challenge the trial court's findings as to RCW 13.34.180(1)(a)-(d) or (f) and, as we conclude in section II.A above, substantial evidence supports the finding as to subsection (e). Because proof of these statutory factors satisfies the due process concerns related to termination of parental rights, the trial court did not err when it found K.S. was currently unfit to parent I.D.W.

K.S. nevertheless claims that "where the evidence shows the parent stayed sober for several months at the time of the trial, more than past use is required to prove unfitness." In support of this argument, K.S. cites *In re C.B.*, but that reliance is misplaced. In *C.B.*, both of the mother's substance use treatment counselors testified that her prognosis was good, and the child's near-future there was six to twelve months. 134 Wn. App. at 957-58. Here, in contrast, I.D.W.'s near future is less than one month and one of K.S.'s counselors testified as to her concern that

K.S. was returning to the same apartment, which she considered a risky environment and not supportive of addressing K.S.'s parenting deficiencies. The trial court in *C.B.* also heard testimony of family and friends that the mother had significantly changed in the four months prior to the termination trial. There was no such testimony here. Thus, *C.B.* is distinguishable.

Moreover, while K.S. correctly recites the court's holding in *C.B.* that past substance use alone cannot establish current unfitness (*id.*), the trial court here did not rely solely on past substance use in its assessment of K.S.'s current unfitness. The court explained that K.S.'s substance use "impair[ed] her ability to adequately care for the children" and that K.S. "has failed to substantially remedy her parental deficiencies in the over four years since entry of the disposition orders." Consistent with these findings, the Department presented evidence that K.S. does not have the ability to provide for I.D.W.'s basic needs as a full-time parent, noting, for example, that she has never cared for I.D.W. for an overnight visit since the dependency began over four years ago, much less cared for her for any extended period of time. The evidence at the termination trial also shows that K.S. had difficulty assessing safety risks; for example, when she participated in visits at the foster mother's home, she was unable to prevent I.D.W. and her sister from accessing her vape cartridge and she encouraged them to jump off the stairs.

K.S.'s social worker also testified at length regarding the myriad reasons K.S. was unfit to parent I.D.W. at the time of trial. The social worker explained:

> [T]here is a pattern of engaging with services and then crashing, like a high engagement when she goes to an inpatient treatment or something and then crashing. And so I think because of the high-

potency opioids that [K.S.] uses, the risk to [I.D.W. if returned to K.S.] is death.

. . . .

And also, these children have really high needs.[4] I think we've heard from the caregivers about all that it takes to provide for them for their health issues, for their mental health issues, for their developmental issues. And so all of these have to do -- require a person that is able to provide all of these services and I don't think [K.S.] is able to do that.

But mostly, I think the issue is that of safety for the children because I don't think that [K.S.] wanted any of the moments where the children have been put in such danger. I don't think she wanted them to happen. I don't think that she wanted [I.D.W.] to ingest opioids but it happened. And so there is just a clear pattern of not paying attention.

Elaborating further on her reasons for concluding that K.S. was currently unfit despite being sober prior to the trial, the social worker added:

Because . . . high-potency synthetic opioids are so dangerous . . . [K.S.], when she relapses, she goes like full in . . . . [F]or example, in March of 2024 when she relapsed, like, all of the participants in the courtroom saw her smoking drugs from a bowl on the screen . . . her behavior is reckless.

[B]ecause we have had the situation where before trial she is sober, before our permanency planning hearing, she is sober, and we have, like I said, continued this so many times and all of the times she has gone back to that same behavior. And it goes back to that same behavior in a way that she cannot plan for the safety of these children.

Thus, contrary to K.S.'s assertion that the trial court improperly discounted her sobriety at trial, substantial evidence regarding her ongoing and unaddressed

---

4 Although this testimony pertained to all four of K.S.'s children, evidence at trial as to I.D.W. established their special needs included occupational therapy to address "sensory input/output, mouthing, and eating non-food items," physical therapy, and behavioral therapy to address "anxiety and her emotional regulation."

parental deficiencies and the resulting risk to I.D.W.'s safety supports the trial court's finding that, at the time of trial, K.S. was unfit to parent I.D.W.[5]

III

The trial court did not err when it terminated K.S.'s parental rights to I.D.W. Accordingly, we affirm the termination order.

Feldman, J.

WE CONCUR:

---

[5] Briefly addressing the second step of the applicable legal framework, K.S. also claims, "[b]ecause the Department did not prove [she] was unfit, it necessarily follows that termination of her relationship with I.D.W. is not in I.D.W.'s best interest." In support of her argument, K.S. cites *In re Welfare of A.B.*, 168 Wn.2d 908, 925, 232 P.3d 1104 (2010), which concluded "it is 'premature' for the trial court to address the second step before it has resolved the first." Here, as discussed in the text above, the Department proved K.S. was currently unfit to parent I.D.W. Thus, *A.B.* is inapposite and this related argument fails. K.S. does not otherwise challenge the trial court's finding that "[t]ermination of parental rights is in the best interest of this child" (emphasis omitted), which is therefore a verity on appeal. *See A.N.C.*, 24 Wn. App. 2d at 416. Lastly, K.S. also argues the trial court's finding that "relapse always followed" lacks substantial evidence because she was sober at trial. As discussed in the text above, K.S.'s sobriety at trial is not dispositive here because the trial court did not rely solely on past substance use.